**In the Matter of PROPERTY MANAGE-MENT & INVESTMENTS, INC., Debtor.**

**Bankruptcy No. 81–2307.**

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Feb. 17, 1982.

Jawdett Rubaii, Clearwater, Fla., for debtor.

John K. Olson, Tampa, Fla., for state court receiver.

Isidore Kirshenbaum, Sarasota, Fla., for first mortgagees.

George Wilsey, St. Petersburg, Fla., and James Baxter, Clearwater, Fla., for unsecured investors.

Michael S. Edenfield, Brandon, Fla., for second mortgagees.

ORDER ON MOTION TO VACATE RESTRAINING ORDER; ORDER ON APPLICATION FOR DISMISSAL OF CHAPTER 11; ORDER ON APPLICATION TO BE EXCUSED FROM TURNOVER PROVISION; ORDER ON APPLICATION FOR DISMISSAL OR ORDER OF ABSTENTION; ORDER ON APPLICATION FOR APPOINTMENT OF TRUSTEE; ORDER ON APPLICATION TO COMPEL TURNOVER OF PROPERTY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 business reorganization case and the matters under consideration are various and sundry motions which are as follows:

A Motion to Vacate Restraining Order filed by several holders of certain first mortgages; an Application for Dismissal of Chapter 11 Case; an Application to be Excused from Turnover Provision and Application for Appointment of Trustee both filed by the State Court Receiver, Thomas R. Spencer (Receiver); an Application for Dismissal or Order of Abstention, filed by counsel for certain unsecured investors; and an Application to Compel Turnover of Property filed by the Debtor, Property Management & Investments, Inc. (PMI).

The Court heard argument of counsel for the respective parties, considered the record which reveals the following facts relevant to the disposition of these Motions.

The Comptroller of the State of Florida, Gerald A. Lewis, filed a suit against PMI and others and sought an appointment of a receiver and injunctive relief in the Pinellas County Florida Civil Action No. 80–14048–16. On December 18, 1980, the Circuit Court appointed Thomas R. Spencer to serve as Receiver of the properties of the Debtor. In the same suit, the Circuit Court entered an order on July 17, 1981 and declared that certain funds in the hands of the Receiver constitute trust funds for the benefit of unsecured investors and on an oral motion determined that the unsecured investors to be a class and appointed attorneys to represent this class. The so-called class, composed of persons who advanced funds to PMI, but unlike other investors, who received either a first or a second mortgage, did not receive anything. It appears that PMI was in the business of selling first and second mortgages, all of which promised substantial interest income to the investors.

The record further reveals that the Receiver embarked on a program of liquidating all the assets of PMI. According to the report filed by the Receiver in the State Court proceeding, most of the real estate holdings of PMI have already been disposed of.

An order entered by the Circuit Court on July 17, 1981, directed the Receiver to distribute $900,000 of the approximately $1.2 million held by the Receiver to the unsecured investor creditors and also authorized the abandonment by the Receiver of the remaining real properties. This procedure is somewhat perplexing since the State Court records do not indicate to whom the properties were abandoned. The Circuit Court also authorized a commencement of foreclosure action against remaining properties of the Debtor.

Subsequent to the entry of this Order, the Circuit Court also held a hearing and directed the payment of certain administra-

tive expenses and fees and awarded a distribution of an additional $250,000 of the so-called trust funds, leaving a balance of $150,000 in the hands of the Receiver. While the Order embodying the Court's ruling was submitted to the Circuit Court prior to the filing of the Chapter 11, it was not signed prior to the date the petition for relief was filed by PMI in this Court on December 11, 1981. The State Court Receiver did not turn over to the Debtor any of the properties held by him as mandated by § 543 of the Bankruptcy Code. The State Court Receiver now seeks as noted earlier, to be excused from the turnover provisions pursuant to § 543(d).

Considering first the Motions filed by the Receiver, it is clear that the Receiver is not a party in interest in this case, thus has no standing to seek a dismissal or conversion or abstention. Nor does he have standing to be excused from complying with the turnover provisions of § 543(d). The Receiver is not a creditor of PMI, has no personal claim to any of the assets of PMI, neither does the Receiver represent anyone on whose behalf he might be a party of interest. Thus, any relief sought by the Receiver is without merit and cannot be granted for lack of standing.

Considering the Motion filed by counsel for the so-called class of unsecured investors, it is evident that the initial question is the validity of the existence of a "class" and next the validity of the appointment of counsel. The validity of legally cognizable "class" must be tested against the relevant provisions of Florida Rules of Civil Procedure governing class actions. Fla.R.Civ.P. 1.220(a) reads as follows:

1.220(a)

"Before any claim or defense may be maintained on behalf of a class, the Court shall first conclude that: (1) the members of the class are so numerous that separate joinder of each member is impracticable; (2) the claim or defense of the representative party raises questions of fact or law common to those of each member of the prospective class; (3) the claim or defense of the party is typical of

the claim or defense of each member of the class; (4) the representative party can fairly and adequately protect and represent the interest of each member of the class."

In addition, before a class can be established, the pleading seeking a recognition of a class which contains the designation "class representation" shall include "class representation allegations" and must contain specific recitation of the essential elements set forth in Rule 1.220(c). Rule 1.220(d)(2)(A) further provides that any member of the class shall be given an option to be excused from the class and, of course, entitled to proper notice and hearing on the matter. There is no question that in the case under consideration there was not even a semblance of compliance with the pleading requirement of Fla.R. Civ.P. 1.220(c); the "designation" having been made on an oral motion, there was no notice given to members of the class affording an opportunity to opt out although the order appointing counsel intimates that the members of this so-called class are not bound by the representation in the order and they may hire their own attorney.

It appears from the foregoing, that no such proper determination was ever made by the Circuit Court. As the result, legally no class exists and in turn there is no power to appoint counsel for a class as such. Even assuming that this so-called class has standing to be heard as a class, this Court is satisfied that the Motion to Dismiss or Abstain is not well founded and should be denied for the following reasons:

It is evident and clear that the entire State Court Receivership was designed to be and it is nothing but a total and absolute liquidation of the assets of an insolvent debtor. It is further evident that the distribution of the proceeds of a liquidation are not done, and will not be done if the matter remains in the State Court in accordance with the scheme of distribution provided for by Bankruptcy Code either in the context of a liquidation plan under Chapter 11 or in the context of § 726 if the

case is converted into a Chapter 7 liquidation case. It is well established that the liquidation of the assets of an insolvency not in a bankruptcy forum is not permissible and federal law will supercede any provisions and any State Court proceedings.

Section 543 of the Code requires a custodian to deliver to the trustee any properties that are in the custodian's possession, custody or control; § 543(b)(1). This Section makes important substantial changes in the prior law, § 2(a)(2), § 69(d), § 70(a)(8) and § 257 of the Bankruptcy Act, which Sections dealt with this subject. The pre-Code provisions all had important limitations by requiring a State Court receiver or an assignee for the benefit of creditors to turn over property in their custody control only if such non-bankruptcy receiver was appointed within four months prior to the date of bankruptcy. The all encompassing definition of the term "properties of the estate" by § 541 leaves no doubt that rights of the estate are no longer limited to properties which are in actual or constructive possession of the Bankruptcy Court. Moreover, the elimination of the distinction between plenary and summary jurisdiction by § 241, Bankruptcy Reform Act of 1978; Public Law 95–598, 28 U.S.C., § 1471(b) leaves no doubt that the Bankruptcy Court has jurisdiction over all controversies relating to the properties of the estate regardless in whose possession they are and regardless of how long the custodian has been in possession of the properties. There is no question that a custodian is not entitled to adequate protection as a condition to turnover and the duty of the custodian to deliver and turn over properties in his possession is absolute, unless excused by the Bankruptcy Court pursuant to § 543(d). In support of the request by the Receiver to be excused from the turnover provision, the Receiver contends that the liquidation of the Debtor's assets are complete or almost complete and nothing remains to be done except to distribute the monies to the beneficiaries of the "trust fund" established by the State Court. These very allegations defeat the right to relief sought by the Receiver under § 543(d). First, there is no

evidentiary basis for the determination by the State Court that the funds held by the Receiver are, in fact, trust funds either as a result of an express trust; resulting trust; or a constructive trust. It is evident and there is no contention that there was an express trust created. Neither is there proof that it was intended that these monies were to be held in trust, thus giving rise to a resulting trust. Whether or not upon proper application and proof, these investors are able to impress a constructive trust in these funds has yet to be seen, but at this time it is clear that the funds are just general "properties of the estate," thus subject to the ordinary scheme of distribution envisioned either by Chapter 11 or Chapter 7 in case of a conversion. The holders of the first mortgage were already given either a quit claim deed or were authorized to foreclose and their claims were satisfied and the "class" under the state court proceeding would receive a distribution. The State Court made no provision and apparently did not intend to make any provision for protection of the holders of the second mortgages who might very well be legally in the same class with the members of the so-called "class" established by the State Court and entitled to share pro rata in the funds available for distribution. This being the case, it is evident that it would be contrary to the scheme of distribution envisioned by the Bankruptcy Code to permit the State Court Receiver to retain the funds and, therefore, there is no valid reason why the State Court Receiver should be relieved from a duty imposed on him by § 543(b) to turn over the properties in his possession and render an accounting. This Court is not unmindful that the Bankruptcy Court in the case of *In re Sun World Broadcasters*, 5 B.R. 719, 2 CBC 899 (1980) (George L. Proctor, Bankruptcy Judge) did abstain in spite of the fact that the planned state court distribution of assets did not follow the Bankruptcy priorities. First, the factual situation involved in *Sun World, supra* is markedly different from what is present in the instant case. In *Sun World, supra* the matter was not litigated for over

four years and the case was an involuntary case by a disgruntled creditor who was dissatisfied with the outcome of the state court litigation. The present case is pending for less than a year and is a voluntary petition by a Debtor who is eligible for relief under Chapter 11 of the Code. This Court disagrees, however, with the statement in *Sun World, supra* that federalism, commodity and the dual judicial system permits a non-bankruptcy forum to liquidate all assets of the Debtor and distribute the proceeds of the liquidation contrary to the scheme of distribution ordained by Congress. This Court is constrained to recognize the proposition that when Congress exercised its constitutional right to legislate on the subject matter of bankruptcy, Art. I, § 8 intended to permit a dual system of liquidation of assets of insolvent debtors especially when a liquidation of assets of debtors in a non-bankruptcy forum is done contrary to the scheme of administration of insolvent estates established by Congress. The supremacy clause of the Constitution, U.S.Const., Art. I, § 8, Cl. 4, clearly mandates that any proceeding contrary to federal law must give way and Debtors and creditors are entitled to full protection of the Bankruptcy Code. There is no question that when receivership is initiated under a state statute which is in effect a state insolvency law, then such a receivership is superceded by bankruptcy and any action taken in a state insolvency proceeding is utterly null and void. *Emil v. Hanley*, 318 U.S. 515, 63 S.Ct. 687, 87 L.Ed. 954 (1943).

It further appears, as noted, that the State Court authorized the Receiver to abandon the remaining real properties of the Debtor and authorized either the commencement or the continuation of a foreclosure action although it is not clear who has actual physical control or possession of this so-called abandoned property. It is clear that the abandonment by the Receiver of the properties of the estate has no legal force and effect and the Debtor is entitled to take possession of the same immediately.

Since it appears that the Receiver is unwilling to voluntarily surrender and turn over possession and control, particularly the keys to the premises involved, this Court is satisfied that the Receiver shall turn over the same forthwith in light of the fact that the Receiver has no intention to administer these assets which he abandoned pursuant to the order of the State Court.

Nothing stated herein shall be construed to be an indication by this Court that this is a viable reorganization case and will be maintained as such or converted into a Chapter 7 liquidating case on the request of a party of interest.

This leaves for consideration the Motion to Abstain under § 305 and the Motion to Appoint a Trustee. Having concluded that the interest of the second mortgage holders can only be protected by retaining the case and ordering a turnover, this Court is satisfied that an abstention would not be in the best "interest of creditors and the Debtor," therefore, abstention would not be proper. The Motion which seeks the appointment of a trustee is filed pursuant to § 1104 of the Code. Section 1104(a)(1) permits the appointment of a trustee in a Chapter 11 case on the request of a party of interest for "cause" including fraud, dishonesty, incompetency or gross mismanagement of affairs of the Debtor by the current management. The affairs of this Debtor are, for almost a year, in the hands of a State Court Receiver. There is no evidence in this record at this time that the current management of the Debtor is guilty of any of the conducts which would furnish "cause" required by this Section for the appointment of a trustee.

In accordance with the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Vacate Restraining Order filed by the holders of certain first mortgages be, and the same hereby is, denied on the ground that the relief sought was not filed in conformity with the Rules governing adversary proceedings; Part VII of the Bankruptcy Rules. It is further

ORDERED, ADJUDGED AND DECREED that the Application for Dismissal of Chapter 11 and the Application to be

Excused from Turnover Provision filed by the State Court Receiver, Thomas R. Spencer, be and the same hereby are, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Application for Dismissal or Order of Abstention filed by certain investors be, and the same hereby is, denied. It is further

ORDERED, ADJUDGED AND DECREED that the Application to Compel Turnover of Property filed by the Debtor be, and the same hereby is, granted and the State Court Receiver shall, within 10 days from the date of entry of this Order, surrender all properties including books and records in his possession which are properties of the estate to the Debtor. It is further

ORDERED, ADJUDGED AND DECREED that the Application to Appoint Trustee be, and the same hereby is, denied without prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the Motion for Rehearing filed by the Debtor be, and the same hereby is, denied as moot.