In the Matter of AMERICAN
SECURITIES AND LOAN,
INC., Debtor.

Robert F. CRAIG, Trustee, Plaintiff,

v.

DOUGLAS COUNTY BANK AND
TRUST CO., A Nebraska
Banking Organization, Defendant.

Bankruptcy No. 84-1230-W.
Adv. Pro. No. 86-0148.

United States Bankruptcy Court,
S.D. Iowa.

Oct. 2, 1987.

P. Scott Dye, Omaha, Neb., for Douglas Co. Bank & Trust.

Frank M. Schepers, John D. Sens, Council Bluffs, Iowa, David D. Begley, Omaha, Neb., for Robert F. Craig, Trustee.

American Securities and Loan Ins., pro se.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LEE M. JACKWIG, Bankruptcy Judge.

On March 12, 1987 a hearing on defendant's motion for summary judgment was held. P. Scott Dye appeared on behalf of defendant Douglas County Bank & Trust Company (Bank) and Frank M. Schepers, John D. Sens, and David D. Begley appeared on behalf of Robert F. Craig, the trustee. The adversary complaint filed by the trustee alleges the defendant (Bank) was the recipient of a voidable setoff and preferential transfer. In its motion, the Bank contends it is entitled to a judgment

as a matter of law in that there are no factual disputes and that a release obtained from the receiver of the debtor operates as a complete defense to the trustee's claims. For the reasons discussed below, the Bank's motion is denied.

## FACTUAL BACKGROUND

This case arises out of the failure of a state chartered industrial savings institution, American Securities and Loan, Inc. (ASL), of Council Bluffs, Iowa. On August 9, 1984, the Auditor of the State of Iowa (Auditor) closed ASL, citing insufficient capital and nonearning investments as reasons for the closing.[1] On the day before, the Iowa District Court for Pottawattamie County had appointed the Auditor as receiver for purposes of liquidating ASL's affairs. On August 10, 1984, ASL filed for protection under Chapter 11. On that same date, ASL applied for a temporary restraining order and an order for turnover of assets to the debtor. After a hearing on the matters, former Bankruptcy Judge Richard Stageman ruled on August 16, 1984 that the best interests of the creditors would be served by a liquidation conducted by the Auditor under a state court receivership. ASL's application was denied and ASL's properties were ordered to remain in the hands of the Auditor as custodian. Shortly thereafter, the debtor moved for a new trial, a creditors committee requested reconsideration of the order and the receiver moved to dismiss. On September 24, 1984, these motions were denied.

On February 28, 1985, the auditor and Bank applied to Judge Stageman for approval of an agreement concerning the transfer of notes to the Bank in satisfaction of ASL's debt to the Bank. On June 1, 1984, the Bank had provided ASL a line of credit in the amount of $170,000.00. In return, ASL executed a promissory note in favor of the Bank and pledged certain notes and the underlying collateral of the notes as security. At the time approval of the agreement was sought, approximately

---

1. The auditor is charged with licensing, supervising, and examining industrial loan compa-  nies. Iowa Code Chapter 536A.

$204,000.00 was due to the Bank. This figure included the line of credit, overdrafts, and interest. The agreement called for the Bank to retain the pledged notes and underlying collateral in lieu of the debt. Also, the agreement had language that stated:

> Whereas, certain claims and disputes have arisen regarding these obligations and collateral, and regarding other transactions between Bank and American Securities, and the parties hereto desire to settle all disputes between them by this agreement.

The agreement required the receiver and the Bank to execute a release that contained boiler plate language releasing the Bank from:

> any and all causes of action, suits, accounts, contracts, claims, and demands whatsoever, in law or in equity, which said American Securities, the estate of American Securities, and the undersigned, as receiver for American Securities now has, or has had at antyime [sic] prior to the date thereof, against Bank, its officers, directors, employees, and agents on account of any claim, act, error, contract agreement, circumstance, matter, cause, or thing.

The auditor signed the release, and on February 28, 1985 Judge Stageman approved the agreement. This agreement and the court's approval thereof that are the focal points of the dispute between the Bank and the trustee.

On May 14, 1985 the creditors committee moved for the appointment of a trustee on the ground the debtor had failed to investigate a purported voidable transfer. Noting that the motion stood unopposed, Judge Stageman granted it on June 4, 1985. Robert F. Craig was appointed as trustee on December 30, 1985.

The trustee claims that another loan transaction between the Bank and ASL occurred on June 1, 1984. More specifically, the trustee asserts that, as of that date, ASL owed the Bank an unsecured debt of $883,106.72. The trustee further contends that ASL sold the Bank certain notes and the collateral securing such notes for $883,-106.72 with the purchase price consisting of a credit on the $883,106.72 debt. The trustee argues the transfer of the notes and collateral fell within the 90–day preference period of section 547 and the 90–day voidable setoff period of section 553(b).

Simply stated, the Bank's main position is that setoff and preferential transfer claims are barred as a matter of law because of the agreement and Judge Stageman's sanctioning of it. The trustee asserts, among other things, that it was not the intent of the court, the receiver, or receiver's counsel to release preference and setoff claims. The Bank responds by contending that extrinsic evidence as to the intent of the parties is not controlling over the unambiguous language of the agreement and release.

## DISCUSSION

### A. *Summary Judgement Standard*

Bankruptcy Rule 7056 provides that Federal Rule of Civil Procedure 56 which governs summary judgment applies in bankruptcy adversary proceedings. The Eighth Circuit Court of Appeals has set forth the following standard:

> Summary judgment is appropriate only when the moving party satisfies its burden of showing the absence of a genuine issue as to any material fact and that it is entitled to judgment as a matter of law. In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the opposing party and must give that party the benefit of all reasonable inferences to be drawn from the facts. This Court often has noted that summary judgment is "an extreme and treacherous remedy," and should not be entered "unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and unless the other party is not entitled to recover under any discernible circumstances."

*Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 391–92 (8th Cir.1986) (citations omitted). Applying this standard to this

case, the Bank's motion for summary judgment cannot be granted.

The parties expend much energy in arguing whether the parol evidence rule is applicable to this case. Consideration of the parol evidence rule is not necessary. Rather, the court directs its examination to the Code's treatment of receivers and trustees. Based on this examination, the court finds that the Bank is not entitled to prevail as a matter of law because the receiver had no power to void transfers and hence had no power to settle setoff and preferential transfer claims. It necessarily follows that Judge Stageman did not authorize the settlement of such claims when he signed the agreement on February 28, 1985.

The Code confers many powers upon a trustee. Among them is the power to pursue preferential transfers under section 547. Section 547(b) specifically provides that it is the *trustee* who "may avoid" a preferential transfer. Under section 1107(a), the debtor as debtor-in-possession has the powers of a trustee and thus has the ability to sue under section 547. There is no Code provision that grants a receiver such power.

There is a dearth of case law addressing whether a receiver can be cloaked with the powers of a trustee. In *Matter of Property Management and Inv., Inc.*, 19 B.R. 202 (Bankr.M.D.Florida 1982), creditors urged the court to exercise its abstention powers and excuse a state court appointed receiver from the turnover provisions of section 543. Initially the court agreed with the creditors but upon reconsideration decided that abstention was improper. The court stated:

> [T]his court is now satisfied upon reconsideration that while the interest of certain parties may be adequately taken care of in the State Court Receivership, the State Court is not in the position to assure full and complete relief to all parties of interest, neither can it assure a fair and equitable distribution of the assets of [the debtor] in conformity with the scheme of distribution envisioned by the Bankruptcy Code. In addition, it is clear that the State Court Receiver is

unable to assert the powers of avoidance reserved to the bankruptcy trustee under §§ 544, 545, 547 and 548.

*Id.* at 206.

In discussing who may sue to recover preferential transfers, *Collier* addresses the issue of a receiver maintaining such an action:

> Section 105 of the Code prohibits the bankruptcy judge from appointing a receiver in a case under title 11 under any circumstances. The Code has sufficient provision for the appointment of a trustee when needed. Section 701, for example, provides for the appointment of an interim trustee '[p]romptly after the order for relief ...' Appointment of a receiver is now impossible and would circumvent the established procedures.

4 *Collier on Bankruptcy*, ¶ 547.52[4] (15th ed. 1986), *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 316 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6273 and 11 U.S.C. section 105.

These authorities lead this court to conclude the receiver had no power to settle preference claims. Parenthetically, the court notes that Judge Stageman recognized this in entertaining a motion for a new trial concerning his earlier order of abstention and order denying application for turnover of assets. In that proceeding, the creditors committee and the debtor argued that if the assets in the possession of the receiver were not turned over, the preference claims would be lost. Judge Stageman responded:

> I don't think the preference will be lost. I haven't dismissed this case. You're still a debtor.
>
> . . . .
>
> You can be in a lawsuit any place you want. That's what I meant when I said I don't think the state [receiver] has a right to pursue any lawsuits. I turned assets over to them; and I suppose you might be included in that cause of action, but that wasn't in my mind. I have no intention that there be a preferential transfer lost. I haven't dismissed this case.
>
> . . . .

You're still a debtor, and your rights to collect those—pursue those preferential transfers and so forth are still yours.

Plaintiff's Ex. 5, pgs. 18 and 20.

### CONCLUSION AND ORDER

WHEREFORE, based upon the discussion set forth above, it is hereby found that the Bank is not entitled to judgment as a matter of law.

THEREFORE, the Bank's motion for summary judgment is denied.

Deborah S. Krauth, Chariton, Iowa, for debtors.

Elizabeth A. Nelson, Des Moines, Iowa, Chapter 12 trustee.

Linda R. Reade, Asst. U.S. Atty., Des Moines, Iowa, for the U.S.

David L. Davitt, Des Moines, Iowa, for the Bank.